IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Mitchell Ryan <br><br> *Plaintiff*, <br><br> v. <br><br> Grapevine-Colleyville Independent School District and Jorge Rodriguez in his official capacity as GCISD School Board President <br><br> *Defendants*. | Civil Action No. 4:21-cv-01075-P |

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Comes Now Plaintiff Mitchell Ryan ("Mr. Ryan") and files this Brief in support of his Motion for Temporary Restraining Order and Preliminary Injunction.

## Background

Grapevine-Colleyville Independent School District allows 30 minutes for citizens to address the board at its meetings during an open public forum. Citizens are allowed to address the board for no less than one minute.

While citizens are generally unrestricted in the issues they may bring to the board's attention during the open public forum portion of the meeting, the board has published an official policy restricting citizens from mentioning names of district staff members (the "Speech Content Policy"). The Speech Content Policy specifically states:

> Attacks of a personal nature against Board members, GCISD staff, students or other citizens will not be allowed or tolerated. Speakers must refrain from mentioning specific names of staff members during their comments.[1]

Mr. Ryan attended the board's August 23, 2021, meeting and attempted to comment regarding Principal James Whitfield, principal of GCISD's Colleyville Heritage High School. During his comments, Mr. Ryan was interrupted repeatedly by GCISD School Board President Jorge Rodriguez and disallowed from continuing his comments regarding Principal Whitfield.

In addition to applying the Speech Content Policy against Mr. Ryan, President Rodriguez also engaged in viewpoint discrimination against Mr. Ryan by applying an unpublished Ad Hoc Viewpoint Policy against his speech. This is evidenced by President Rodriguez's decision to allow a woman to mention Principal Whitfield's name three times while offering comments favorable to Principal Whitfield at the August meeting.

In a comment on Facebook, President Rodriguez explained the bounds of his Ad Hoc Viewpoint Policy, how it differs and conflicts with the clear text of the Speech Content Policy, and how he had applied it against Mr. Ryan while allowing another woman to speak in apparent violation of the Speech Content Policy. President Rodriguez wrote:

---

[1] *GCISD Board Meeting Decorum*, Grapevine Colleyville Independent School District, https://www.gcisd.net/news/what_s_new/gcisd_board_meeting_decorum (last visited September 20, 2021).

> [M]entioning a name is not against the rules. Making a
> complaint about an individual by name or title is. I had to wait
> until he made a complaint to stop him. The same applies to the
> lady that mentioned the name of the principal three times. She
> was expressing support, and that was within the rules. I will
> explain this again before the next Open Forum. Fortunately
> 62 out of 63 speakers played by the rules.

Until he made this confession in his online comments it had appeared to Mr. Ryan that President Rodriguez was enforcing the Speech Content Policy in cutting off his comments during the August meeting. However, it appears that Principal Rodriguez instead intends to enforce his Ad Hoc Viewpoint Policy at upcoming meetings.

Mr. Ryan intends to attend the scheduled September 27, 2021 7:00pm GCISD board meeting, along with other future board meetings, and to address the board regarding Principal Whitfield again. He expects, however, that his comments will again be cut off by President Rodriguez through President Rodriguez's enforcement of either the Speech Content Policy or the Ad Hoc Viewpoint Policy.

## Legal Standard

There are four prerequisites for a temporary restraining order or preliminary injunction. To prevail, a plaintiff must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm, for which he has no adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from its being granted; and (iv) that a temporary restraining order will not disserve the public interest. *Clark v. Prichard,* 812 F.2d 991, 993 (5th Cir. 1987);

*Canal Auth. of the State of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*).

"Underlying the grant of such relief must . . . be an evaluation of the equitable considerations involved: the plaintiff's likelihood of prevailing on the merits, the possibility of irreparable harm to the plaintiffs, the counterbalancing risk of harm to the defendants, and the public interest." *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976). A plaintiff is not, however, required to prove its entitlement to *summary judgment* in order to establish "a substantial likelihood of success on the merits" for preliminary injunction purposes. *See ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 596 n. 34 (5th Cir. 2003); *Byrum v. Landreth,* 566 F.3d 442, 446 (5th Cir. 2009).

"None of [these] four requirements has a fixed quantitative value." *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 582 (E.D. La. 2016) (citing *Texas v. Seatrain Int'l*, S.A., 518 F.2d 175, 180 (5th Cir. 1975)). Instead, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id*. Thus, in applying the four-part test, the Court must conduct "a delicate balancing," which weighs "the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury that possibly could flow from the denial of preliminary relief." *Id*.

## Mr. Ryan is Likely to Prevail on the Merits of His Claims

There is a substantial likelihood Mr. Ryan will prevail on the merits of his claims. GCISD's Speech Content Policy expressly prohibits speech on the basis of its content—whether the speaker mentions a district employee by name. This content-based speech restriction is presumptively unconstitutional.

The Supreme Court recently strengthened and clarified its application of strict scrutiny to content-based speech restrictions in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). "[A] clear and firm rule governing content neutrality is an essential means of protecting the freedom of speech, even if laws that might seem 'entirely reasonable' will sometimes be 'struck down because of their content-based nature.'" *Id.* at 171.

The Supreme Court held that even "facially *content-neutral* laws, will be considered *content-based* regulations of speech" if the laws "cannot be 'justified without *reference to the content* of the regulated speech." *Id.* at 164 (emphasis added). In fact, "[a]n innocuous justification cannot transform a facially content-based law into one that is content neutral." *Id.* at 166. "Because strict scrutiny applies either when a law is content based on its face or when the purpose and justification for the law are content based, a court must evaluate each question before it concludes that the law is content neutral and thus subject to a lower level of scrutiny." *Id.*

"Innocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech. That is why the First Amendment expressly targets the operation of the laws—i.e., the 'abridg[ement] of speech'—rather than merely the motives of those who enacted them." *Reagan Nat'l Adver. of Austin v. City of Austin*, 972 F.3d 696, 707 (5th Cir. 2020) (quoting *Reed*, 576 U.S. at 167.).

Indeed, this concern that a content-based policy will be enforced in a viewpoint-motivated manner appears to be what has happened here. President Rodriguez has admitted to developing and applying his Ad Hoc Viewpoint Policy that allows speakers to

mention district employees by name so long as they do not criticize the employees. This is viewpoint discrimination, which is "a more blatant and egregious form of content discrimination." *Reed*, 576 U.S. at 168.

These presumptively unconstitutional policies cannot be justified absent a compelling governmental interest accomplished through the least restrictive means necessary to achieve that interest. *Id.* at 2226. Neither the Speech Content Policy nor the Ad Hoc Viewpoint Policy advance a compelling or even important government interest.

Too often, government suppresses speech when it disagrees with the underlying message. Sometimes it suppresses speech just for convenience. *McCullen v. Coakley*, 134 S. Ct. 2518, 2534-35 (2014). But requiring a close fit between ends and means prevents states from "sacrific[ing] speech for efficiency." *Riley v. National Federation of Blind*, 487 U.S. 781, 795 (1988). Importantly, the burden of proof rests on the government, not the speaker, to demonstrate that a challenged law is narrowly tailored. *Casey v. City of Newport*, 308 F.3d 106, 111 (1st Cir. 2002). The Defendants cannot meet such a burden in this case.

The GCISD Speech Content Policy and President Rodriguez's Ad Hoc Viewpoint Policy both fail the test of strict scrutiny—they silence speech, they do not serve any compelling interest, and they are not narrowly tailored. Accordingly, Mr. Ryan can expect to prevail on the merits of his claims.

## Immediate Irreparable Harm

If the Court finds the policies violate Mr. Ryan's First Amendment rights, then the question of immediate, irreparable harm is a simple one. A long and unbroken line of cases

have established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). When First Amendment rights are burdened, there is a presumption of irreparable harm. *Cmty. Communications v. City of Boulder*, 660 F.2d 1370, 1376 (10th Cir. 1981).

Mr. Ryan has already been harmed once when he was silenced at GCISD's August meeting. If the Speech Content Policy and Ad Hoc Viewpoint Policy are allowed to remain in effect at GCISD's future meetings, Mr. Ryan can expect to be further silenced from voicing his criticisms of district employees, including Principal Whitfield.

## Remaining Elements for Temporary Injunctive Relief

Defendants will not suffer undue hardship or loss as a result of a Temporary Restraining Order because there is no exigent or immediate need for Defendants to prohibit Mr. Ryan from mentioning the names of district employees during his comments during the open public forum portion of GCISD's meetings. Defendants will not be harmed by an injunction that stops them from "violat[ing] . . . First Amendment rights"— something they have no right to do. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006). This should be balanced against the immediate, irreparable violation of Mr. Ryan's rights if the Court refuses to enjoin the Defendants.

Issuance of a Temporary Restraining Order would also not adversely affect the public interest, but rather is in the public's interest. "Even minimal First Amendment violations constitute[] irreparable injury . . . and preventing them is always in the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). The end result of speech prohibitions is that the "stock of information from which

members of the public may draw" is limited. *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978).

Because this lawsuit is brought to vindicate Mr. Ryan's First and Fourteenth Amendment rights, and because there are no conceivable damages that could result to the Defendants from the issuance of a temporary restraining order or preliminary injunction, Mr. Ryan requests that any bond requirement be waived or that the bond requirement be otherwise set at zero or some other nominal amount. *See Continuum Co. v. Incepts, Inc.*, 873 F.2d 801, 803 (5th Cir. 1989) (recognizing that "some courts have waived the security requirement when they have found that the plaintiff was . . . very likely to succeed on the merits.").

## Conclusion

The Court should grant the motion for a temporary restraining order prior to the GCISD's next board meeting, scheduled on September 27, 2021 at 7:00pm and upon a hearing a preliminary injunction pending trial prohibiting the enforcement of GCISD's Speech Content Policy of prohibiting comments that mention the names of district employees or that contain "attacks of a personal nature" and of President Rodriguez's Ad Hoc Viewpoint Policy prohibiting comments that criticize or complain of a district employee by name or title. The Court should additionally grant any and all further relief to which Plaintiff may be justly entitled.

Respectfully submitted,

**THE LAW OFFICES OF TONY MCDONALD**

By:  /s/ Tony McDonald

Tony McDonald
State Bar No. 24083477
tony@tonymcdonald.com
1501 Leander Dr., Ste. B2
Leander, TX 78641
(512) 200-3608 (Tel)
(815) 550-1292 (Fax)

*Counsel for Plaintiff*

Dated September 21, 2021