IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **MITCHELL RYAN,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action 4:21-cv-1075-P |
| **GRAPEVINE-COLLEYVILLE** | § | |
| **INDEPENDENT SCHOOL** | § | |
| **DISTRICT et al.,** | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court is Plaintiff Mitchell Ryan's Motion for a Temporary Restraining Order and Preliminary Injunction ("Motion"). ECF No. 3. Having considered Plaintiff's Verified Complaint ("VC") (ECF No. 1), the Motion, Defendants' Response (ECF No. 12), supporting documents, arguments of counsel,[1] and applicable law, the Court finds that Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction should be, and hereby is, **DENIED** as to a Temporary Restraining Order ("TRO").

## BACKGROUND

Defendant Grapevine-Colleyville Independent School District ("GCISD") is a K–12 public school system located in Tarrant County; Defendant Jorge Rodriguez ("Rodriguez") (collectively "Defendants"), sued in official capacity, is GCISD School

---

[1]On Friday, September 24, 2021, the Court held a hearing regarding the necessity of a Temporary Restraining Order. Although the Court's Briefing Order (ECF No. 5) stated the Court would conduct an evidentiary hearing, the Court heard only arguments from counsel and no evidence or testimony was received.

Board President and presides over GCISD board meetings. Pl.'s VC at 3, ¶¶ 10, 11, ECF No. 1. Plaintiff Mitchell Ryan ("Ryan") is a GCISD resident who regularly attends GCISD board meetings and comments during the public forum portion. *Id.* ¶ 9.

As early as 2008, GCISD began implementing policies to direct personal complaints and concerns through three different alternative grievance procedures. Defs.' Resp. Br. at 2, ECF No. 12. GCISD adopted the current alternative grievance policy ("Grievance Policy") on July 6, 2020. Defs.' Resp. App'x at 3–8, ECF No. 13-6. In addition, GCISD implemented a public participation policy ("Participation Policy"), with the current policy being adopted on November 5, 2019. *Id.* at 1–2, ECF No. 13-4; Defs.' Resp. Br. at 1–2.

GCISD further utilizes decorum polices to maintain orderly conduct during school board meetings. Pl.'s VC at 4, 4 n.1. Relevant here is the GCISD Board Meeting Decorum policy ("Decorum Policy"), which was posted to the School District website on August 22, 2021 "in response to audience disruptions and a general lack of decorum."[2] *Id.* The Decorum Policy specifically states:

> Attacks of a personal nature against Board members, GCISD staff, students or other citizens will not be allowed or tolerated. Speakers must refrain from mentioning specific names of staff members during their comments. Instead, we ask you to comply with the appropriate grievance policy (DGBA, FNG and GF) to have a complaint regarding a specific staff member heard by the Board.

*Id.*

---

[2] The Court notes that it is unclear which policy or policies are at issue. Ryan's Verified Complaint, Motion, and Brief discuss the Decorum Policy—which was posted online on August 22, 2021. *See* ECF Nos. 1, 3–4. On the other hand, Defendants' Response discusses the Grievance Policy and Participation Policy—both of which have been enacted for at least one year. *See* Defs.' Resp. Br. at 2–3, 6–8. And during the Hearing, both parties asserted differing views on whether the Grievance and Participation Policies supported or conflicted with the Decorum Policy.

Ryan attended the GCISD school board meeting on August 23, 2021, the first with the new Decorum Policy. Pl.'s TRO Br. at 2, ECF No. 4. There, Ryan attempted to make comments while referring to the name of a GCISD high school principal. *Id.* And President Rodriguez interrupted Ryan multiple times, which prevented Ryan from finishing his comments. *Id.* In contrast, another citizen made favorable comments—without interruption—while referring to the name of the same GCISD principal.[3] *Id.* After the meeting, President Rodriguez attempted to explain the different enforcement as to Ryan (who was not allowed to name and discuss the principal) and the other citizen in attendance (who was allowed to name and discuss the principal). Specifically, President Rodriguez wrote:

> [M]entioning a name is not against the rules. Making a complaint about an individual by name or title is. I had to wait until he made a complaint to stop him. The same applies to the lady that mentioned the name of the principal three times. She was expressing support, and that was within the rules. I will explain this again before the next Open Forum. Fortunately[,] 62 out of 63 speakers played by the rules.

*Id.* at 3.

Because Ryan believes his First Amendment rights were violated, and because he intends to attend future GCISD board meetings, Ryan filed a Motion for a Temporary Restraining Order and a Preliminary Injunction to bar GCISD from enforcing its policies that unconstitutionally restrict speech.

---

[3]The Court notes that during its cursory review of the video of the August 23, 2021 meeting (ECF No. 14), approximately five individuals (not including Ryan) referred to **specific individuals by name** without interruption by the board. This is both deeply concerning and disturbing. And under the Court's reading of the Decorum Policy, this appears to be in direct contravention of the directive that all "[s]peakers must refrain from mentioning specific names of staff members during their comments."

3

## APPLICABLE LAW

The First Amendment provides, in relevant part, that "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. CONST. amend. I. The First Amendment was "fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)). The interchange of ideas necessarily entails that speech may not be prohibited merely because one disagrees with its content or it offends one's sensibilities. *See Fed. Commc'ns Comm'n v. Pacifica Found.*, 438 U.S. 726, 745 (1978) ("[T]he fact that society may find speech offensive is not a sufficient reason for suppressing it."). Accordingly, "[t]he power of the state must not be used to 'drive certain ideas or viewpoints from the marketplace,' even if a majority of the people might like to see a particular idea defeated." *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1327 (11th Cir. 2017) (Pryor, J., concurring) (quoting *Simon & Schuster, Inc. v. Members of the N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116, (1991)).

Although the First Amendment provides robust protection to the freedom of speech, the protection is not absolute. Specific to speech restrictions on public property, the Supreme Court "has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes." *United States v. Kokinda*, 497 U.S. 720, 726 (1990). The Supreme Court has sorted government property into three categories of "public" forums: (1) the traditional public forum, (2) the designated public forum, and (3) the limited public forum. *Christian Legal Soc'y Chapter of the Univ.*

4

*of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 679 n.11 (2010). Accordingly, the Court must determine the nature of the forum at issue before beginning its analysis. *See Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).

In both traditional public forums (i.e., property that has long been devoted to assembly or debate, such as public streets and parks) and designated public forums (i.e., property intentionally opened up for the purpose of acting as a public forum), "any restriction based on the content of . . . speech must satisfy strict scrutiny." *Christian Legal Soc'y*, 561 U.S. at 679 n.11 (quoting *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009)). However, restrictions on speech in a limited public forum (i.e., property limited to use by certain groups or dedicated to the discussion of certain subjects) are subject to a lower level of scrutiny. *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–07 (2001). Thus, "[w]hen the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech. The State may be justified 'in reserving [its forum] for certain groups or for the discussion of certain topics.'" *Id.* at 106 (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) (second alteration in original)). In a limited public forum, however, the government "must not discriminate against speech on the basis of viewpoint," *id.* at 106, and any restriction "must be reasonable in light of the purpose served by the forum." *Id.* at 107 (quoting *Cornelius*, 473 U.S. at 806).

## LEGAL STANDARD FOR A TEMPORARY RESTRAINNG ORDER

A temporary restraining order is "an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of

persuasion." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985). The purpose of a temporary restraining order is to preserve the status quo until a reasoned resolution of a dispute can occur. *See Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

Accordingly, a court may grant a temporary restraining order only when the movant establishes that: (1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the temporary restraining order is not granted; (3) the threatened injury to the movant outweighs the threatened harm to the defendant; and (4) the granting of the temporary restraining order will not disserve the public interest. *Daniels Health Sci., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013); *accord Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011); *see also* FED R. CIV. P. 65; *Hassani v. Napolitano*, No. 3:09-CV-1201-D, 2009 WL 2044596, at *1 (N.D. Tex. 2009) (Fitzwater, J.) (explaining that a temporary restraining order is "simply a highly accelerated and temporary form of preliminary injunctive relief," which requires that the party seeking such relief to establish the same four elements for obtaining a preliminary injunction).

In the First Amendment context, once the plaintiff's likelihood of success on the merits is established, the other three elements ordinarily follow suit. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295–98 (5th Cir. 2012). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). And a school district "would need to present powerful evidence of harm to its interests" to show that the potential

negative effects of an injunction would outweigh the infringement of a plaintiff's First Amendment rights. *Opulent Life Church*, 697 F.3d at 297. Finally, "injunctions protecting First Amendment freedoms are always in the public interest." *Id.* at 298 (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)).

## ANALYSIS

At this early stage in the litigation, Ryan has not demonstrated a likelihood of success on the merits. To show a substantial likelihood of success, "the plaintiff must present a prima facie case, but need not prove that he is entitled to summary judgment." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir.2013). In seeking a temporary restraining order, the Court is mindful that the plaintiff bears the burden to establish a likelihood of success on the merits. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

Ryan primarily argues that GCISD's Decorum Policy is a content-based restriction. Pl.'s Br. at 4–6. As a content-based restriction, the restriction is therefore presumptively unconstitutional and must survive strict scrutiny. *Id.* And because GCISD cannot show a compelling interest or that the restriction is narrowly tailored, the Court should find that the Decorum Policy is constitutionally invalid. *Id.*

Defendants argue that the Grievance and Participation Policies should be analyzed under a forum analysis. Defs.' Resp. Br. at 5–8. Accordingly, because a school board meeting is a limited public forum, *see Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747 (5th Cir. 2010), GCISD can implement reasonable restrictions—even if they are content-based—in order to facilitate their meetings in an effective and efficient manner. Defs.'

7

Resp. Br. at 5–8. Defendants argue that because both policies comport with *Fairchild*, they pass the intermediate scrutiny test and are therefore constitutionally valid. *Id.*

At this stage in the litigation, considering the limited record before the Court, and applying the legal standard as the Court must, the Court concludes that Ryan has not carried his burden of demonstrating a likelihood of success on the merits for two reasons.

*First*, Ryan has wholly failed to present any evidence, arguments, or authorities related to a forum analysis in the First Amendment context. By framing GCISD's Decorum Policy as a content-based restriction, Ryan argues that *Reed v. Town of Gilbert* controls the Court's analysis. In *Reed*, the Supreme Court clarified the law regarding content-based speech restrictions. *See* 576 U.S. 155, 171 (2015); *see also Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 972 F.3d 696, 702–07 (5th Cir. 2020) (discussing *Reed*'s impact on content-based speech restrictions). But Ryan's reliance on *Reed* is misplaced. Specifically, Ryan fails to distinguish between a standard content-based speech restriction (which would be analyzed under the *Reed* framework) and a speech restriction on public property (which would be analyzed under a forum analysis). Because of this misplaced reliance, Ryan has failed (1) to present any evidence or arguments regarding what type of forum the GCISD school board meetings should be characterized as, and (2) to present any binding or persuasive authorities to support his position as to why the restriction is unconstitutional in that type of forum.

*Second*, Ryan did not even attempt to distinguish the instant case from the case in *Fairchild*—which is binding upon the Court. Thus, because Ryan failed to distinguish

8

*Fairchild*, the Court is not willing—at this stage in the litigation—to challenge Fifth Circuit precedent without further briefing and having conducted an evidentiary hearing.

In sum, the arguments made by Ryan are not enough to carry his burden necessary to obtain a temporary restraining order. The Court therefore concludes that the state of the record at this early juncture fails to sufficiently establish that Ryan is substantially likely to succeed on the merits of his constitutional claim. Accordingly, because Ryan has failed to satisfy the first element of a temporary restraining order, the Court need not discuss the remaining elements. The Motion for a Temporary Restraining Order is therefore **DENIED.**

But this case is important. And the Court has grave concerns regarding GCISD's speech restriction policies in general and the policies' seemingly uneven implementation in particular. "After all, '[t]he language of the political arena . . . is often vituperative, abusive, and inexact'—and yet the First Amendment often safeguards such speech." *Monroe v. Hous. Indep. Sch. Dist.*, 794 F. App'x 381, 383 (5th Cir. 2019) (quoting *Watts v. United States*, 394 U.S. 705, 708 (1969); *see also Matal v. Tam*, 137 S. Ct. 1744, 1766 (2017) (Kennedy, J., concurring in part) ("A subject that is first defined by content and then regulated or censored by mandating only one sort of comment is not viewpoint neutral. To prohibit all sides from criticizing their opponents makes a law more viewpoint based, not less so."); Letter from Thomas Jefferson to Elbridge Gerry (Jan. 26, 1799), *in* 30 THE PAPERS OF THOMAS JEFFERSON 645–52 (Barbara B. Oberg ed., 2003) ("I am . . . against all violations of the Constitution to silence by force and not by reason the complaints and criticisms, just or unjust, of our citizens against the conduct of their agents.").

Therefore, although the Court denies the requested temporary restraining order, the Court finds it appropriate for both parties to submit further briefing regarding GCISD's speech restriction policies, and for the Court to hold an evidentiary hearing prior to resolving the Motion for a Preliminary Injunction.[4]

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Mitchell Ryan's Motion for a Temporary Restraining Order and Preliminary Injunction is **DENIED** as to a Temporary Restraining Order.

It if further **ORDERED** that an evidentiary hearing on Plaintiff's Motion for a Preliminary Injunction will be held at **9:00 a.m. on Tuesday, October 12, 2021,** in the Fourth Floor Courtroom of the Eldon B. Mahon United States Courthouse, located at 501 W. 10th Street, Fort Worth, Texas. The Parties shall submit proposed Exhibit Lists and Witness Lists **on or before October 8, 2021.**

---

[4] The Court is highly confident that with the observations and admonitions of this Order in mind, President Rodriguez and the GCISD school board, will fairly and equally enforce GCISD's Decorum Policy until a full and complete hearing can be conducted on the Motion for a Preliminary Injunction. Certainly, President Rodriquez is not at liberty to pick and choose which citizens he will enforce the Decorum Policy against. The arbitrary enforcement of the Decorum Policy by an elected government body against one concerned citizen and not others rocks the very foundations of the First Amendment. *See* George Washington, quoted in GREAT QUOTES FROM GREAT LEADERS 64 (compiled by Peggy Anderson (1990) ) ("If the freedom of speech is taken away then dumb and silent we may be led, like sheep to the slaughter."); *see also Sullivan*, 376 U.S. at 269 ("An unconditional right to say what one pleases about public affairs is what I consider to be the minimum guarantee of the First Amendment."). Indeed, "[if]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." *Texas v. Johnson*, 491 U.S. 397, 414 (1989).

If the Parties would like to file supplemental briefs or appendices, Plaintiff must file **on or before October 4, 2021.** If Plaintiff files a supplemental brief or appendix, Defendants' may file a response brief and appendix **on or before October 7, 2021.**

**SO ORDERED** on this **27th day of September, 2021**.

*/s/ Mark T. Pittman*
Mark T. Pittman
UNITED STATES DISTRICT JUDGE