UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

MITCHELL RYAN,

    Plaintiff,

v.                                                     No. 4:21-cv-1075-P

GRAPEVINE–COLLEYVILLE INDEPENDENT
SCHOOL DISTRICT ET AL.,

    Defendants.

## MEMORANDUM OPINION AND ORDER[1]

The First Amendment prohibits laws "abridging the freedom of speech." U.S. CONST. amend. I. In this case, Plaintiff Mitchell Ryan contends that Grapevine County Independent School District's ("GCISD") old and new school board meeting policies violate the First Amendment. As to the August 2021 Policy ("Old Policy"), Ryan argues that the Policy violates the First Amendment both facially and as applied after he tried to speak during the public comment period of an August 2021 school board meeting. As to the October 2021 Policy ("New Policy"), Ryan argues that the Policy also violates the First Amendment on its face.

## BACKGROUND

### A. GCISD School Board Meetings

Throughout the summer and fall of 2021, the "culture war" opened a new front—GCISD school board meetings.[2] Parents and residents

---

[1] This opinion and order memorializes the preliminary rulings made on the record. *See* ECF No. 63.

[2] *See* Edward McKinley & Austin Bureau, *The Center of the Culture War*, HOUSTON CHRONICLE (Oct. 15, 2021), https://www.houstonchronicle.com/politics/texas/article/trump-culture-war-texas-school-board-fights-books-16535985.php; *see also* Simone Carter, *North Texas Parents Crusade Against Critical Race Theory*, DALLAS OBSERVER (Oct. 18, 2021, 4:00 AM), https://www.dallasobserver.com/news/in-critical-race-theory-confusion-southlake-admin-tells-teachers-to-offer-opposing-view-of-holocaust-12618526; *see also* Kim Roberts, *Two North Texas School Districts Prohibit Signs and*

turned out in record numbers to participate in the meetings. ECF No. 46 at 4.

Each board meeting allots 30 minutes for public comment. ECF No. 49 at 8. Those who seek to speak during this time must submit a Speaker Request Form to speak during the public comment period. ECF No. 46 at 2. Speakers then have between one and three minutes to address the board. ECF No. 49 at 8–9. The Board Operating Procedures are the official policy governing the public comment period and are voted on and adopted by the board each year. ECF No. 54 at 6–7. The relevant portion of these procedures in August 2021 provided:

> We request that persons speaking in open forum . . . refrain from raising complaints against such individuals [employees] or personally identifying them in any way in their remarks unless pursuant to the District's grievance policies . . . Public comment on such matters will not be allowed unless pursuant to those policies.

ECF No. 46, App'x at 217. GCISD also sets Board Meeting Decorum Protocols ("Protocols") that explain the expectations for speakers at board meetings. ECF No. 54 at 7. But these Protocols are "guideline[s]" rather than official policy. ECF No. 34 at 28.

## B. August 2021 Meeting

Plaintiff Mitchell Ryan—a local resident with no children in GCISD—attended a GCISD board meeting in August 2021. ECF No. 46 at 3. Ryan submitted a Speaker Request Form and was thus allowed to speak during the public comment period. *Id.* at 1. In his speech, Ryan sarcastically criticized Principal James Whitfield for Facebook photos of him and his wife. *Id.* at 4. Defendant Jorge Rodriguez—the presiding officer and school board president—gaveled Ryan for these comments. *Id.* But Ryan ignored Rodriguez and continued to criticize Principal Whitfield. *Id.* Rodriguez then informed Ryan that he could not mention

---

*Trustee Criticisms at Board Meetings*, THE TEXAN (Aug. 23, 2021), https://thetexan.news/two-north-texas-school-districts-prohibit-signs-and-trustee-criticisms-at-board-meetings/.

employee names or raise employee complaints during the meeting. *Id.* at 5. Ryan then tried to change the subject, but his time expired. *Id.*

## C. Temporary Restraining Order and Preliminary Injunction

As a result of the August meeting, Ryan sued GCISD and President Rodriguez, contending that the Old Policy violated the First Amendment on its face and as applied to him. ECF No. 1. Shortly after, Ryan sought a temporary restraining order and a preliminary injunction against GCISD and President Rodriguez. ECF No. 3. The Court denied Ryan's request for a temporary restraining order (ECF No. 17) but held a preliminary injunction hearing in October 2021. ECF No. 46 at 6. At the hearing, GCISD informed the Court that it would be updating its Policies at the upcoming October board meeting. ECF No. 34 at 19–20. The Court then deferred ruling on Ryan's request for a preliminary injunction. ECF No. 33. After GCISD revised its Policy, the Court denied Ryan's request for preliminary injunction as moot. ECF No. 36.

## D. New Policy

In October 2021, GCISD revised its Board Operating Procedures. The New Policy provides:

> The Public Comment period is not intended for the presentation of allegations of employee misconduct, requests for employee discipline; lodging personal attacks; shaming; or demeaning specific named GCISD employees, or unnecessarily disclosing private information about GCISD employees or students.

ECF No. 54, App'x at 305. As a result of the policy change, Ryan filed an amended complaint—challenging both the Old Policy and New Policy. Ryan challenges the Old Policy on its face and as applied to him. But he challenges the New Policy only on its face because he has not participated in a GCISD board meeting since the New Policy took effect. ECF No. 49 at 11–13.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it could change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court views the evidence in the light most favorable to the nonmovant but need not comb through the record in search of evidence creating a genuine issue of material fact. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

## ANALYSIS

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I. Claims under the Free Speech Clause of the First Amendment are analyzed in three steps. *First*, the Court must decide whether the First Amendment protects the type of speech at issue. *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 343–44 (5th Cir. 2001). *Second*, we must categorize the type of forum at issue. *Id.* at 344. And *third*, we must consider whether the speech restriction in the forum passes the applicable standard of review. *Id.* at 344–45.

Here, the Parties do not dispute that the First Amendment protects the speech at issue. ECF No. 46 at 9. And the Court agrees. *See Watkins v. City of Arlington*, 123 F. Supp. 3d 856, 864 (N.D. Tex. 2015) (acknowledging that "the parties do not dispute and the Court concludes that Plaintiffs engage[d] in protected [First Amendment] activities"). The Court thus analyzes only the forum at issue and whether GCISD's policies pass the applicable standard of review of that forum.

### A. Forum

There are three categories of forums: (1) traditional and designated public forums; (2) limited public forums; and (3) nonpublic forums. *Chiu*, 260 F.3d at 344–45. Because neither party contends that GCISD board

meetings are a nonpublic forum, only the first two categories are at issue.

Courts divide the first category into traditional and designated public forums. "In a traditional public forum—parks, streets, sidewalks, and the like—the government may impose reasonable time, place, and manner restrictions on private speech, but restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited." *Minnesota Voters All. v. Mansky*, 585 U.S. __ (2018) (slip op. at 7). Designated public forums are "spaces that have not traditionally been regarded as a public forum but which the government has intentionally opened up for that purpose." *Id.*

The second category—limited public forums—provide for public expression "for certain groups or for the discussion of certain topics." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106–107 (2001). Such forums are subject to a lower standard of review than traditional and designated public forums. *Id.*

In distinguishing between these two categories, courts focus on two factors: "(1) the government's intent with respect to the forum, and (2) the nature of the [forum] and its compatibility with the speech at issue." *Chiu*, 260 F.3d at 346 (internal citations omitted). As to government intent, "the government creates a designated public forum only by intentionally opening a nontraditional forum for public discourse." *Id.* at 347 (internal citations omitted); *see also Hays Cnty. Guardian v. Supple*, 969 F.2d 111, 116 (5th Cir. 1992) (looking "to whether the government was motivated by 'an affirmative desire,' or 'express policy' of allowing public discourse on the property in question").

Ryan argues that the public comment period of GCISD's board meetings is a designated public forum because it is open to the general public to speak on any topic. ECF No. 49 at 14. Defendants counter that the public comment period is a limited public forum because GCISD policy shows no clear intent to create a designated public forum during the public comment period. ECF No. 46 at 16. To further support their argument, Defendants point to the fact that the school board can only deliberate on set agenda topics. *Id.* at 16.

The question of whether GCISD's board meetings are a designated public forum or a limited public forum is "inherently a factual one." *Stewart v. D.C. Armory Bd.*, 863 F.2d 1013, 1014 (D.C. Cir. 1988); *see Verlo v. Martinez*, 820 F.3d 1113, 1144, 2016 WL 1395205, at \*24 (10th Cir. Apr. 8, 2016) ("[F]orum status is an inherently factual inquiry about the government's intent and the surrounding circumstances that requires the district court to make detailed factual findings"); *Three Expo Events, L.L.C. v. City of Dall.*, 182 F. Supp. 3d 614, 626 (N.D. Tex. 2016) (Fitzwater, J.) ("Determining the nature of the forum is a fact-intensive inquiry"). Because there is a genuine issue of material fact as to the status of the forum, the Court is "unable to categorize [the forum's] status as a matter of law." *Chiu*, 260 F.3d at 348.[3]

## B. Restrictions

Categorizing the forum "lights the path to the correct result" in First Amendment cases. *Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 761 (5th Cir. 2010). But the correct path to take is unclear because the Court cannot determine the forum at this stage of the case. That said, both Parties agree that the meeting is at least a limited public forum. The Court thus follows the limited public forum path.

The government may restrict speech in a limited public forum if the regulation (1) does not discriminate against speech "on the basis of viewpoint" and (2) is "reasonable in light of the purpose served by the forum." *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 107 (2001).

Ryan contends that the Old Policy and the New Policy constitute facial viewpoint discrimination. ECF No. 39 at 8–12. On top of his facial challenge, Ryan also argues that the Old Policy resulted in viewpoint discrimination as applied to his conduct. *Id.* at 9. The Court first considers Ryan's facial challenges.

### 1. Facial Challenge

Ryan contends that GCISD's Old Policy and New Policy are facially unconstitutional because they prevent criticism of GCISD employees

---

[3] The forum categorization has no bearing on Plaintiff's facial challenges but does affect his as-applied challenges.

but allow praise. *Id.* at 9. "[A] facial challenge to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual." *Freedom Path, Inc. v. IRS,* 913 F.3d 503, 508 (5th Cir. 2019). To succeed in a typical facial attack, Ryan must establish that "no set of circumstances exists" in which the Policies would be valid. *United States v. Stevens*, 559 U.S. 460, 472 (2010).

### a. The Old Policy

The Old Policy stated:

> We request that persons speaking in open forum . . . refrain from raising complaints against such individuals [employees] or personally identifying them in any way in their remarks unless pursuant to the District's grievance policies . . . Public comment on such matters will not be allowed unless pursuant to those policies.

ECF No. 46, App'x at 217. This policy, however, was completely replaced in October 2021 by the New Policy.

### i. The Old Policy is moot

Defendants argue that Ryan's facial challenge to the Old Policy is moot because the policy is no longer in effect. ECF No. 46 at 13. Ryan does not dispute this. And the Court agrees.

A policy is moot if "there is no indication that the [school board] has any intention of reverting to its former policies." *Roberts v. Haragan*, 346 F. Supp. 2d 853, 857 n.5 (N.D. Tex. 2005) (Cummings, J.). The party asserting mootness bears the burden of persuading the court that the activity or policy is moot. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Here, because GCISD has repealed and replaced the Old Policy, the Policy cannot "reasonably be expected to recur." *Id.*

That said, a claim for nominal damages generally precludes mootness. *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 748 (5th Cir. 2009). But Ryan does not claim nominal damages in his facial challenge

to the Old Policy. ECF No. 39 at 8–9.[4] Ryan only claims nominal damages in his as-applied challenge. *Id.* at 9–10.

Still, even if Ryan were seeking nominal damages in his facial challenge, such a claim does not save Ryan's facial challenge from mootness in this case. The purpose of the nominal damage mootness exception is to prevent a case from being "dismissed *in its entirety* so long as the plaintiff has alleged a cognizable claim for nominal damages for the constitutional violation he suffered." *Ward v. Santa Fe Indep. Sch. Dist.*, 35 F. App'x 386, 386 (5th Cir. 2002) (per curiam) (emphasis added).

Here, however, the Court does not preclude Ryan from recovering any claimed damages by dismissing his facial challenge as moot. In dismissing Ryan's facial challenge, the Court dismisses one of Ryan's *challenges*. But the *claim* challenging the constitutionality of GCISD's Old Policy remains.[5] Thus, Ryan can vindicate any constitutional violation by pursuing his nominal and compensatory damage claims in his as–applied challenge.[6] *See Turning Point USA at Ark. State Univ. v.*

---

[4] Ryan can specifically claim nominal damages in a facial challenge "in the First Amendment context, because First Amendment rights are central to guaranteeing our capacity for democratic self-government." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 625 (3d Cir. 2013); *see also* George Washington, quoted in GREAT QUOTES FROM GREAT LEADERS 64 (compiled by Peggy Anderson (1990)) ("If the freedom of speech is taken away then dumb and silent we may be led, like sheep to the slaughter.").

[5] In *Morgan*, the district court "found the facial and as–applied challenges to be distinct claims that . . . posed distinct legal questions." 589 F.3d at 744 n.5. The Fifth Circuit questioned this distinction, highlighting that while "there are different burdens attending an as–applied challenge [versus a facial challenge], regardless of our disposition of [the facial challenge's mootness], the plaintiffs will continue to litigate the constitutionality of the [d]istrict's rules." *Id.* The court then "defer[red] to the judgement of the district court," but questioned the efficiency of "separating the claims" as it produced convoluted results on appeal. *Id.*

[6] The Supreme Court recently reversed a lower court's dismissal of a claim for mootness in a similar First Amendment case. *Uzuegbunam v. Preczewski*, 592 U.S. ___ (2021) (slip op.). But key differences exist. In *Uzuegbunam*, the district court dismissed *both* the facial and as–applied challenge to a repealed university policy as moot even though plaintiffs claimed nominal damages. 378 F. Supp. 3d 1195, 1209 (N.D. Ga. 2018). But Ryan does not claim nominal damages in his facial challenge, and the Court dismisses only his facial challenge because facial and as–applied challenges entail

*Rhodes*, 409 F. Supp. 3d 677, 686–87 (E.D. Ark. 2019), *aff'd*, 973 F.3d 868 (8th Cir. 2020) (dismissing the plaintiffs' facial challenge to a repealed speech policy as moot because the plaintiffs could vindicate any constitutional violation in their as–applied challenge).

In sum, because the Old Policy has been replaced and Ryan does not specifically claim nominal damages in his facial challenge, Ryan's facial challenge to the Old Policy is moot.

### ii. The Old Policy is constitutional under Fifth Circuit precedent

Even if the Court were to consider Ryan's facial challenge to the Old Policy, the Policy is constitutional under *Fairchild*. 597 F.3d 747 (5th Cir. 2010).[7] In *Fairchild*, the Fifth Circuit held that a similar school board meeting policy was not viewpoint discrimination but rather a reasonable, content–neutral regulation. *Id.* at 760. So even if the Court were to consider Ryan's facial challenge, the policy is facially constitutional under *Fairchild*.

Ryan's contention that the Supreme Court overruled *Fairchild* in *Reed v. Town of Gilbert*, 576 U.S. 155, 177 (2015) is incorrect. He argues that in *Reed*, the Supreme Court held that content–based restrictions are always subject to strict scrutiny regardless of the forum. ECF No. 49 at 22. But the Court made no such holding in *Reed* and has since stated

---

different remedies. *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). Ryan's as-applied challenge remains.

[7] The Court respectfully questions whether the Fifth Circuit's holding in *Fairchild*—that a policy does not constitute viewpoint discrimination if it channels certain viewpoints to alternative forums—is still valid precedent for at least two reasons. 597 F.3d at 760–61. *First*, providing an alternative forum does not automatically eliminate discrimination. *See Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*, 347 U.S. 483 (1955); *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 556 (1974). *Second*, an alternative forum has no bearing on whether a restriction is content based or viewpoint neutral. *See Southeastern Promotions, Ltd.*, 420 U.S. at 556; *see also* Letter from Thomas Jefferson to Elbridge Gerry (Jan. 26, 1799), *in* 30 THE PAPERS OF THOMAS JEFFERSON, 645–52 (Barbara B. Oberg ed., 2003) ("I am . . . against all violations of the Constitution to silence by force and not by reason the complaints or criticisms, just or unjust, of our citizens against the conduct of their agents.") That said, this Court is bound by the Fifth Circuit's ruling in *Fairchild* and "has no authority or discretion to diverge from Fifth Circuit precedent." *Hamilton v. Mike Bloomberg 2020 Inc.*, 474 F. Supp. 3d 836, 845 (N.D. Tex. 2020) (Pittman, J.).

that the government may impose content–based restrictions on speech in nonpublic forums if the regulation is reasonable and not based on viewpoint. *Minnesota Voters,* 585 U.S. __ at 7–8.

\* \* \*

Because Ryan did not explicitly claim damages in his facial challenge and can vindicate any constitutional violation under the Old Policy in his as–applied challenge, the Court holds that Ryan's facial challenge to the Old Policy is moot. Defendant's Motion for Summary Judgment on Ryan's facial challenge to the Old Policy is thus **GRANTED**. And Ryan's Motion for Summary Judgment is **DENIED**.

### b. *The New Policy*

The New Policy—enacted in October 2021—provides:

> The Public Comment period is not intended for the presentation of allegations of employee misconduct, requests for employee discipline; lodging personal attacks; shaming; or demeaning specific named GCISD employees, or unnecessarily disclosing private information about GCISD employees or students.

ECF No. 54, App'x at 305.

### i. *The Policy does not restrict speech*

The New Policy states what "the Public Comment period *is not intended* for." *Id.* In a facial challenge, the Court may "not look beyond the text." *See Freedom Path, Inc. v. Internal Revenue Serv.*, 913 F.3d 503, 508 (5th Cir. 2019). Whether the text of the policy is facially unconstitutional turns on the word "intend."

The Court construes "intend" according to its "ordinary, contemporary, common" meaning but consults a dictionary for help in determining that ordinary meaning. *Cascabel Cattle Co., L.L.C. v. United States*, 955 F.3d 445, 451 (5th Cir. 2020). "Intend" can mean "to have in mind; plan." *Intend*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2022). Adopting this definition of "intend" confirms that the Policy is a guideline—GCISD's plan for the public

10

comment period is to focus on school matters rather than employee complaints. A specified plan, however, does not preclude a speaker from speaking on topics outside that plan. "Intend" can also mean "to design for a specific purpose." *Id.* Even if GCISD *designed* the public comment period to discuss matters other than employee complaints, this does not mean that GCISD's design must be adhered to.

So while the Policy states that GCISD did not intend or design the public comment session to discuss employee concerns, the Policy does not prohibit or restrict a speaker from doing so. Ryan's facial challenge to the New Policy thus fails. *See Gagic v. Cnty. of Maricopa*, 21-15857, 2021 WL 6102183 (9th Cir. 2021) (mem. op.) (affirming dismissal of the plaintiff's First Amendment challenge because the plaintiff failed to establish that the language at issue "constitutes a restriction on his freedom of speech, as it did not prohibit him from communicating . . . or penalize him for doing so"); *Cf. Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 876 (N.D. Ill. 2022) (holding that the statute at issue did not violate the plaintiff's First Amendment rights because it did not explicitly restrict any speech).

### ii.  *Ryan challenges no language in the New Policy*

Oddly enough, Ryan does not challenge any language in the New Policy and admits that it is unclear whether it restricts speech. ECF No. 49 at 31. Ryan instead challenges language in the October Board Meeting Decorum Protocols. *Id.* at 26. But neither the Protocols nor the Speaker Request Form is official GCISD policy. *See Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 756 n.24 (5th Cir. 2010) (explaining that the comment session sign-in sheet "merely communicates" the overarching board policy and "explains the limits of the Board's power"). Ryan must identify some language in the New Policy that prohibits speech to succeed in a facial challenge. *Id.* He does not.[8]

---

[8] Ryan also challenges the Protocols as unconstitutionally overbroad and vague. These challenges fail for the same reasons given above. To the extent that Ryan challenges the New Policy, these challenges fail because the New Policy is not a speech restriction.

* * *

Because the New Policy does not restrict speech, Defendant's Motion for Summary Judgment on this issue is **GRANTED**. And Ryan's Motion for Summary Judgment on this issue is **DENIED**.

### 2. As–Applied Challenge

Ryan argues that the Old Policy is unconstitutional as applied to him because it prevented him from criticizing employees during the public comment period but allowed other speakers to praise the same employees. ECF No. 39 at 9. In an as–applied challenge, courts consider the constitutionality of a statute as it was "applied in a particular instance." *Reno v. Flores*, 507 U.S. 292, 300 (1993). To succeed in his as–applied challenge, Ryan must show that GCISD's implementation of the Old Policy was (1) not viewpoint neutral and (2) not reasonable. *Good News Club*, 533 U.S. at 107. Viewpoint discrimination occurs if a policy "provide[s] that public officials c[an] be praised but not condemned." *Monroe v. Houston Indep. Sch. Dist.*, 794 F. App'x 381, 383 (5th Cir. 2019). Viewpoint discrimination is "a clearly established violation of the First Amendment in any forum." *Id.* at 350.

Ryan contends that GCISD discriminated against only critical viewpoints at the August meeting because Ryan was not allowed to criticize President Whitfield, but others were allowed to praise him. ECF No. 49 at 10–11, 28. Ryan also argues that Defendant Rodriguez specifically restricted his speech at the August meeting because Rodriguez had a personal animosity toward Ryan based on his race. ECF No. 52 at 10.

Defendants counter that Rodriguez did not restrict Ryan's speech. ECF No. 46 at 11. Instead, Defendants argue that Ryan's speech was interrupted by audience reactions to his speech. *Id.* at 10. Defendants also argue that the Old Policy does not restrict speech content but instead redirects employee complaints to the appropriate forum. *Id.* at 18. Defendants contend that GCISD uniformly administered its speech policy at the August 2021 meeting and did not discriminate based on

Ryan's identity or viewpoint. *Id.* at 12. It is unclear whether GCISD was attempting to prevent any *criticism* of employees at the August school board meeting or whether they were trying to prohibit *all* naming of school employees.

Ryan contends that the Speaker Request Form and the Protocols are additional evidence that GCISD discriminated against critical viewpoints at the August meeting. This evidence partially supports both Parties' assertions, however. The August Speaker Request Form supports Ryan's contention that viewpoint discrimination occurred because it stipulates that "[p]ersons speaking in open forum *may not raise complaints* against individual employees or students.*" Id.* at 2. The Protocols also state that "*attacks* of a personal nature . . . will not be allowed or tolerated." ECF No. 49 at 10. But the Protocols also favor Defendants because they provide more generally that speakers should "refrain from mentioning *specific names of staff members* during their comments." *Id.* at 10.

Because both sides have set forth specific facts showing that there is "a genuine issue of material fact as to whether [Defendants] engaged in viewpoint discrimination," the Court **DENIES** both Parties' motions for summary judgment on this issue. *Chiu*, 339 F.3d at 283.

## C. Qualified Immunity

Ryan is suing both GCISD and President Rodriguez for allegedly violating his First Amendment rights. A suit brought against a government employee in his official capacity is "to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). It is unclear from Ryan's complaint whether he is suing Rodriguez solely in his official capacity or both his personal and official capacity. Ryan conceded at the motion hearing, however, that he is only suing Rodriguez in his official capacity. ECF No. 63 at 28.

Thus, the Court need not address Rodriguez's qualified immunity defense.

## CONCLUSION

The Court recognizes that there is "no such thing as public liberty, without freedom of speech"[9] and that school board meetings are a vital forum for parental and citizen involvement. The Court also agrees that "trial by jury in civil cases is . . . essential to secure the liberty of the people."[10] Thus, Ryan's Motion for Summary Judgment (ECF No. 48) is **DENIED**. And Defendant's Motion for Summary Judgment (ECF No. 45) is **GRANTED** as to Ryan's facial challenges and **DENIED** as to Ryan's as–applied challenge.

**SO ORDERED** on this **13th day of March 2023**.

_Mark T. Pittman_
Mark T. Pittman
UNITED STATES DISTRICT JUDGE

---

[9] Benjamin Franklin, *Letter from Silence Dogood*, July 9, 1722.
[10] James Madison, Speech in Congress (June 8, 1789), *in* ANNALS OF CONGRESS 454 (Joseph Gales ed., 1789).

14